Houck, J.
This ease comes, into this court on appeal from the common pleas court of Knox county.
The plaintiff’s action is to set aside a deed given by him to the defendant. The deed in question was executed by the plaintiff the next day after he arrived at the age of twenty-one years. The plaintiff is the adopted son of the defendant and her husband, James Berry Sheffer, now deceased.
We do not think it necessary to set out the allegations of the petition, but deem it sufficient to say that the question raised by the pleadings, the answer *306 being a general denial, is: Did the defendant obtain the deed to the real estate described therein from the plaintiff by means of fraud and undue influence ? The plaintiff relies upon his claim of fraud and undue influence, which is denied by the defendant. Upon this issue the question was submitted to this court upon the testimony taken in the court below, which is here in the form of a typewritten transcript.
This case is an important one and we have given it careful, thoughtful and laborious consideration.
The question here involved, upon which this lawsuit must be determined, is one of fact, namely: Did the defendant obtain the deed to the real estate in question by means of fraud and undue influence practiced by defendant upon plaintiff? This question must and will be answered in the light of the proven facts, as found in the transcript of the testimony. The burden of proof is upon the plaintiff, and he must satisfy a court of equity that the claim he makes is true.
The plaintiff, Donald S. Sheffer, was the adopted son of the defendant, May M. Sheffer. He had been under the parental roof of the defendant since his adoption when a mere child. They had lived together in peace, harmony and good will, until a few months after the plaintiff made the deed to the defendant. The evidence clearly satisfies us that plaintiff had every confidence in the defendant, and always, by act, deed and thought seemed to love his mother and respect her wishes. The relationship of parent and child existed, and the law required of the parent the fullest protection and care from her to her minor son, not only in a moral and social way, but likewise in her business transactions with him.
*307 From the evidential facts and outstanding circumstances in the ease we are led to hut one conclusion which is that from the time of the death of James Berry Sheffer, the defendant had in mind to secure for herself the interest and legal rights of the plaintiff in the estate of his foster father, James Berry Sheffer. This commenced the day of the funeral of James Berry Sheffer, just after they returned from the cemetery to the home of defendant, where defendant produced an unexecuted will of her husband, and read only certain parts thereof. This was continued by conversations and acts and statements, and what to us appears to have been a plan on the part of the defendant to secure from plaintiff his rights in the estate without giving any valuable consideration therefor. Her acts, conversation and general demeanor, as shown by the evidence, and the influence exerted over the plaintiff were not such as would impress a court of equity that the mother was putting a protecting arm around her minor son in such way and manner as to protect his property interests in the estate of his foster father, James Berry Sheffer; but, upon the other hand, were of such a character as to fully establish the truthfulness of all the material facts and allegations set forth and stated in plaintiff’s petition.
However, if the testimony is to be relied upon, the real mischief in this case was not done after the plaintiff arrived at full age, but before. At the time of the execution of the deed he did not know the value and extent of his interest in the estate he conveyed, although all the time, and from the death of his father, his mother had full knowledge of it, but did not disclose it to him. This, we think, was not only her moral but her legal duty, as well, to *308 have disclosed to her son full knowledge of the extent and value of his interest in his father’s estate. The relationship that existed between plaintiff and defendant was that of parent and child, and the acts and conduct of the mother in this case are certainly not such as would satisfy a court of her good faith prior to and at the time of the execution of the deed now sought to be set aside.
A court of equity must and does guard with extreme jealousy such transactions between parties standing in the relationship that appears in this case. It is the duty of chancellors to protect the weak as against the strong, and to see that equity and justice are done all parties when not only legal but equitable rights are to be determined.
It is shown by the evidence contained in the transcript of testimony that the benefits- obtained by the defendant in the transfer of plaintiff’s interest in the estate of his father were not conveyed understandingly, and with a full knowledge of all his rights therein. However, his mother had full knowledge of this, and we find that her silence, together with all of the other facts disclosed, clearly indicate such conduct on her part as warrants the granting of the relief prayed for in plaintiff’s petition.
We cannot free ourselves from the close moral and legal relationship that existed between plaintiff and defendant, the motherly influence that was exerted by defendant over plaintiff; and the failure of the defendant in the end to properly use such influence at the very time in the life of her son when he most needed the guidance and protection of a mother is such as to fully establish the claim of the son that he parted with his interest in his *309 father’s estate, not of his own free will and accord, hut by reason of the power and undue influence and fraud, practiced on him by his mother.
Further comment is unnecessary. It follows that the judgment of this court is that the deed in question he set aside, and plaintiff is hereby granted all the relief prayed for in his petition.

Judgment for plaintiff.

Shields and Patterson, JJ., concur.